UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

GEORGE COOPER,                              :

                Petitioner,        :        **REPORT AND RECOMMENDATION TO THE HONORABLE RICHARD M. BERMAN**[*]

       -against-                          :

WARDEN LEPE,                                :

              Respondent.       :        06 Civ. 6958 (RMB)(FM)

---------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.        Introduction

       Petitioner George Cooper ("Cooper") brings this pro se habeas corpus

proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254") to challenge his conviction,

following a jury trial in Supreme Court, New York County, on one count of Criminal Sale

of Marijuana in the First Degree.  (Pet. ¶¶ 1, 4).  On May 1, 2003, Justice Budd G.

Goodman, before whom the case was tried, sentenced Cooper, as a second felony

offender, to a prison term of three and one-half to seven years.

       Cooper's petition raises two related claims:  that the trial court denied him

due process by (a) allowing an undercover police officer to testify on direct examination

about his prior meeting with Cooper, and (b) not declaring a mistrial when the same

---

[*]        This Report and Recommendation was prepared with the assistance of Harlan
Zaback, a student at the California Western School of Law, who is serving as an intern in my
Chambers.

officer volunteered on cross-examination that the prior meeting related to a drug sale.  (Id.
at ¶¶ 12 (A)-(C)).

      For the reasons that follow, Cooper's petition should be denied.
Additionally, pursuant to 28 U.S.C. § 2253(c)(2), Cooper should be denied a certificate of
appealability because he has failed to make a substantial showing of the denial of a
constitutional right.

II.    Background[1]

      The case against Cooper arose out of an extended police investigation of
marijuana sales at 429 Lenox Avenue in Upper Manhattan which began in or around
March 2002.  (Tr. 242).  At trial, the principal prosecution witnesses were two undercover
officers.  Following a Hinton hearing, (id. at 207-24), the trial court permitted the officers
to testify using their shield numbers, rather than their names.[2]  (Id. at 220).

    A.    Pretrial Rulings

      Justice Goodman delivered his Sandoval and Molineux rulings[3] shortly
before the jury was sworn.  The Justice held that the People could establish the fact that

---

    [1]    "Tr." refers to the trial transcript.  "S." refers to the minutes of Cooper's
sentencing on May 1, 2003.  (Docket No. 7).  "Ex." refers to the exhibits annexed to the undated
Declaration of Assistant Attorney General Luke Martland, in Opposition to the Petition for a
Writ of Habeas Corpus.  (Docket No. 6).

    [2]    See People v. Hinton, 31 N.Y.2d 71 (1972).

    [3]    See People v. Sandoval, 34 N.Y.2d 371 (1974); People v. Molineux, 168 N.Y.
264 (1901).

Cooper was convicted of felonies in 1986 and 1995 if he decided to testify, but could not

delve further into those convictions.  (Id. at 7-8).  Additionally, because the defense

indicated that identification would be an issue at trial, the Justice held that Officer 2863

could testify that he previously had met, and "had a conversation with," Cooper at 429

Lenox Avenue.  (Id. at 8).  However, the Justice prohibited any testimony indicating that

the prior meeting and conversation involved a drug sale, warning that he would declare a

mistrial if the officer disobeyed this directive.  (Id. at 8-9).

      B.     Trial

          1.     People's Case

      The People's proof at trial would have enabled a reasonable juror to find as

follows:

      On August 27, 2002, undercover Officers 2863 and 2717 went to 429

Lenox Avenue, where they negotiated a marijuana purchase with Vincent Lang ("Lang"),

who ran a grocery store located at 429A Lenox Avenue.  (Id. at 242-44).  Lang told

Officer 2863 that the price would be a little higher than the "last time" because he was

getting the marijuana from someone else.  (Id. at 243).  After these discussions, Lang left

the store and made a cell phone call, before returning to inform the officers that they

should come back later.  (Id. at 244).  Officer 2863 then gave Lang $1,800 for two pounds

of marijuana and left the store with his colleague.  (Id. at 244, 254-55).

The officers returned to 429 Lenox Avenue approximately one hour later, at which time Lang told Officer 2863 that he was unwilling to complete the sale with Officer 2717 present.  Accordingly, Officer 2717 left the store.  At Lang's insistence, Officer 2717 later moved even further from the storefront.  (Id. at 244, 256).

Once he was satisfied that Officer 2717 had moved far enough away, Lang walked out of the store, followed by Officer 2863.  (Id. at 244-45).  On the street, Officer 2863 saw Lang speak with Cooper.  (Id. at 258).  The two men then entered 429 Lenox Avenue, emerging a few minutes later, at which point Cooper handed Lang a black plastic bag.  (Id. at 245).  After telling Officer 2863, "I got it[,] let's go," Lang entered the store.  (Id. at 259).  Once Officer 2863 joined him inside, Lang delivered the plastic bag, which contained two pounds of marijuana.  (Id. at 259, 264-65).

2.    Officer 2863's Testimony about his Previous Meeting with Cooper

During his direct examination, Officer 2863 testified that he and Cooper previously had engaged in a thirty-second "conversation" on February 19, 2002, at 429 Lenox Avenue.  (Id. at 251-52).  Although Officer 2863 started to describe the subject matter of the conversation, Justice Goodman interrupted him before he was able to suggest that it concerned marijuana.  (Id.).

On cross-examination, Cooper's defense counsel established that Officer 2863 had seen Cooper's photograph in an album at the police station shortly after his

4

August 27, 2002, undercover purchase.  (Id. at 260).  The following questioning then

ensued:

> Q    And how many photographs did you view?
>
> A    Not much because I already dealt with individuals so
>      pretty much knew who he was.  So I told my partner
>      this is the guy I dealt with before and that's him so it
>      wasn't a matter to view a whole bunch of photos
>      because I already dealt with him so I knew who he
>      was.
>
>               *      *      *
>
> Q    Would it be fair to say there were at least fifteen to
>      twenty photographs in that book?
>
> A    Yes but I knew which one I was looking for.
>
> Q    You knew which one you were looking for?
>
> A    Yes.
>
> Q    And were those photographs similar in facial features
>      head, shape, haircut?
>
> A    As to the photographs, there were a few guys of similar
>      features but yes like I stated, I dealt with the individual
>      so it wasn't a matter of me not knowing who he was.  I
>      just went to the photograph to show my partner this is
>      the guy from the previous time I went and I purchased
>      marijuana from.

(Id. at 260-61).  Although this testimony by Officer 2863 arguably violated Justice

Goodman's pretrial rulings, defense counsel voiced no objection and sought no relief

from the court.  Instead, he pursued his questioning, asking the officer:

5

> Q      There is the guy who had a conversation with Mr. Lang
>        in front of the building while you're smoking a
>        cigarette?
>
> A      Yes.
>
> Q      Is that what you told your partner?
>
> A      No, I told my partner that this is the subject that
>        engaged in the transaction and plus I did a buy report
>        paperwork on the individual before that date because I
>        dealt with him before.

(Id. at 261)

After this exchange, defense counsel asked to approach the bench, and the jury was excused from the courtroom.  (Id. at 261-62).  Once again, defense counsel voiced no objection and sought no relief.  (Id. at 262).  Nevertheless, Justice Goodman admonished Officer 2863 that his answers had not been responsive to counsel's questions and directed him to respond directly to counsel's questions.  (Id.).  When the jury was recalled, there were no further problems with Officer 2863's testimony.  (Id. at 263-67).

3.    Defense's Case

Cooper's defense case consisted of two witnesses.  First, testifying on his own behalf, Cooper admitted that he had two prior felony convictions and knew that 429 Lenox Avenue had a reputation as a place where marijuana could be purchased.  (Id. at 323, 336, 342).  Cooper also acknowledged that he knew Lang.  (Id. at 320-21, 328-29).  Cooper explained that he frequently was in the vicinity of 429 Lenox Avenue because he worked for Lang several hours each day cleaning and unloading trucks and

also did other odd jobs in the neighborhood.  (Id. at 321).  However, Cooper denied

having any "recollection" of giving Lang a bag of marijuana on August 27, 2002.  (Id.).

       The other defense witness was an investigator who testified that a window

in the building where the marijuana sale took place was only ten by eleven inches and

difficult to see through.  (Id. at 354, 358-59).  Cooper offered this testimony in an effort

to discredit Officer 2717's testimony that he saw Cooper through the window while he

was waiting for his partner outside the grocery store.  (Id. at 285, 296-99, 374-75).

       4.    Verdict and Sentence

       On April 2, 2003, the jury returned a verdict of guilty on the charge of

Criminal Sale of Marijuana in the First Degree.  (Id. at 444).  On May 1, 2003, Justice

Goodman sentenced Cooper as a second felony offender, to a three and one-half to seven-

year prison term.  (S. 4).

       C.    Subsequent Procedural History

       Cooper appealed his conviction to the Appellate Division, First Department,

contending that (1) the trial court had erred by ruling that Officer 2863 could testify about

his prior conversation with Cooper in February of 2002, and (2) Officer 2863's testimony

that the prior conversation related to a sale of marijuana had denied Cooper a fair trial.

(See Ex. A (Pet'r's Br. on Appeal), at 15-22).

       On March 15, 2005, the Appellate Division affirmed Cooper's conviction.

People v. Cooper, 791 N.Y.S.2d 55 (1st Dep't 2005).  In its unanimous decision, the court

held that, "[s]ince the undercover officer's ability to identify [Cooper] was at issue, the trial court properly exercised its discretion in permitting the officer to testify about his unspecified 'conversation' with [Cooper] on a prior occasion." Id. at 56.  Turning to Cooper's second claim, the court noted that he had failed to preserve his objection that Officer 2863's volunteered testimony that his prior encounter with Cooper was a drug transaction warranted a mistrial, and it rejected "the assertion that such a protest would have been futile." Id.  The court stated further that, "[w]ere we to review this claim, we would reject it," because "the challenged testimony was the product of defense counsel's persistent cross-examination," and the testimony "was not unduly prejudicial and . . . did not deprive [Cooper] of a fair trial." Id.

By letter dated April 8, 2005, Cooper sought leave to appeal to the Court of Appeals.  (Ex. D).  On May 31, 2005, Judge George Bundy Smith denied that application. See People v. Cooper, 4 N.Y.3d 885 (2005).

D.     Habeas Petition

Cooper's habeas petition is dated August 24, and was received by the Pro Se Office of this Court on August 29, 2006.  (Ex. G at 1).  The petition therefore is timely.

In his petition, Cooper renews both of the claims raised on his direct appeal. (Pet. ¶¶ 12 (A)-(C)).

III.   <u>Discussion</u>

      A.   <u>Standard of Review</u>

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  <u>Herrera v. Collins</u>, 506 U.S. 390, 401 (1993).  Instead, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petitioner bears the burden of proving, by a preponderance of the evidence, that his rights have been violated.  <u>Jones v. Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless adjudication of the claim –
>
> (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application of</u>, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d) (emphasis added).

As the Second Circuit noted in <u>Jones v. Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000), the Supreme Court has

> construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'  'Under the

9

'contrary to' clause, a federal habeas court may grant the writ
if the state court arrives at a conclusion opposite to that
reached by [the Supreme] Court on a question of law or if the
state court decides a case differently than [the] Court has on a
set of materially indistinguishable facts.'

(quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)).  Under the "unreasonable

application" clause, a federal habeas court should "ask whether the state court's

application of clearly established federal law was objectively unreasonable."  Id. at 409.

This standard does not require that reasonable jurists would all agree that the state court

was wrong.  Id. at 409-10.  Rather, the standard "falls somewhere between 'merely

erroneous and unreasonable to all reasonable jurists.'"  Stinson, 229 F.3d at 119 (quoting

Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

      Section 2254(d)(2) further authorizes the federal courts to grant a habeas

writ when a claim considered on the merits in state court "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceedings."

      Finally, to the extent that a habeas petition challenges factual findings,

Section 2254(e)(1) provides that "a determination of a factual issue made by a State court

shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."  "If, after

carefully weighing all the reasons for accepting a state court's judgment, a federal court is

convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

      B.      Direct Examination of Officer 2863

      Cooper's first contention is that it was a denial of due process to permit Officer 2863, an undercover who had been involved in a continuing narcotics investigation, to testify on direct examination about his prior conversation with Cooper "at the precise doorway in which [Cooper] was alleged to have handed drugs to Lang." (Ex. A at 15).

      Generally speaking, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), because "rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." Copes v. Schriver, No. 97 Civ. 2284 (JGK), 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997); accord Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983). To prevail on his due process claim, Cooper consequently must show that the evidentiary errors were "of constitutional dimension," such that they deprived him of "fundamental fairness." Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988). For an evidentiary error to rise to this level, it must have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). The evidence "must have been 'sufficiently material to provide the

basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'"  <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir. 1998) (quoting <u>Johnson v. Ross</u>, 955 F.2d 178, 181 (2d Cir. 1992)).

In his appeal, Cooper conceded that "[t]he central issue in []his case was not whether drugs were sold to the undercover officer, but whether [he] was the man who aided . . . Lang in the sale."  (Ex. A at 14-15).  As Justice Goodman recognized, the testimony indicating that Officer 2863 knew Cooper because he previously had conversed with him at 429 Lenox Avenue unquestionably was relevant to that issue.  Moreover, even though Officer 2863 testified that he had been engaged in an investigation at that location since in or around March 2002, there was no suggestion during his direct testimony or the prosecutor's summation that this contact with Cooper was drug related.  Indeed, the prosecutor took care to tell the jury in her summation that "the sole reason" the People had adduced evidence concerning February 19 was "because the undercover had seen . . . Cooper before."  (Tr. 391).  As the prosecutor explained:

> This was not a case and is not a case of mistaken identification.  He had seen him.  He had a thirty second conversation and if you want to see what thirty seconds is, a commercial is about a minute, well thirty seconds to a minute, that's a long time.  Actually sometimes it's much too long so thirty seconds is quite a long time to observe someone and <u>this is what the importance of that testimony was</u>.  <u>Not for anything else</u>.

(<u>Id.</u> (emphasis added)).

Accordingly, Officer 2863's direct testimony concerning his prior meeting with Cooper did not constitute, nor was it proffered as, evidence of a prior similar criminal act.  Although the evidence placed Cooper at 429 Lenox Avenue on a prior occasion, Cooper conceded at trial that he was there almost daily.  There consequently was nothing prejudicial about the fact that he previously had been seen there.  Thus, the sole import of this portion of Officer 2863's testimony was to show that he knew the person he saw with Lang in the course of his August 27 marijuana purchase and had not made a mistaken identification.  The use of the testimony for this purpose was entirely proper.  See United States v. Lumpkin, 192 F.3d 280, 287-88 (2d Cir. 1999) (police officer's testimony that defendant was frequently "in the area where the relevant drug sales occurred" was relevant and not unduly prejudicial; accordingly, the trial court "acted well within its discretion" in allowing the testimony).

      C.    Cross-Examination of Officer 2863

As noted earlier, during cross-examination, Officer 2863 twice made statements suggesting that he had made a prior marijuana purchase from Cooper.  Cooper contends that these answers to his attorney's questions were nonresponsive and should have led to a mistrial.  This claim cannot be considered by this Court because the state court denied it on procedural grounds.  Moreover, even if this claim were to be considered, it would have to be rejected because the introduction of the evidence regarding a prior drug deal did not deprive Cooper of a fair trial.

13

1.    <u>Procedural Default</u>

It is settled law that a federal court may not consider an issue of federal law raised in a state petitioner's petition for a writ of habeas corpus if the state court's prior denial of that claim rested on an adequate and independent state ground.  <u>See, e.g.</u>, <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989); <u>Wainright v. Sykes</u>, 433 U.S. 72, 81 (1977).  A procedural default qualifies as such an adequate and independent state ground, <u>Harris</u>, 489 U.S. at 262, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>accord</u> <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000).

Here Cooper's counsel <u>never</u> requested that Justice Goodman follow through on his threat to declare a mistrial if a police witness mentioned the earlier marijuana transaction.  Accordingly, the Appellate Division found that Cooper's claim that the trial court should have declared a mistrial was unpreserved, and it declined to review it in the interest of justice.  <u>Cooper</u>, 791 N.Y.S.2d at 56.  Pursuant to New York's contemporaneous objection rule, an objection must be raised at trial in order to preserve it for appellate review.  N.Y. Crim. Proc. Law § 470.05(2) (McKinney 1994).  The Appellate Division's finding of procedural default therefore constitutes an adequate and

independent state ground for rejecting his claim.  See Washington v. James, 996 F.2d

1442, 1447-48 (2d Cir. 1993) (federal courts are "reluctant to hear claims procedurally

defaulted in state court . . . out of respect for our dual court system and in deference to the

integrity of the state courts"); Phillips v. Smith, 717 F.2d 44, 48 (2d Cir. 1983)

("[E]xplicit state court reliance on a procedural default bars federal habeas review of the

forfeited claim absent a showing of cause and prejudice regardless of whether the state

court ruled alternatively on the merits of the forfeited claim.").[4]

        Accordingly, this Court may not consider Cooper's mistrial claim unless he

can show both cause for the default and actual prejudice or that the failure to consider his

claim will result in a fundamental miscarriage of justice.  See Coleman, 501 U.S. at 750.

To demonstrate cause, a petitioner must adduce "some objective factor external to the

defense" which explains why he did not raise the claim previously.  Murray v. Carrier,

477 U.S. 478, 488 (1986); Gonzalez v. Sullivan, 934 F.2d 419, 422 (2d Cir. 1991)

(quoting Murray).  The circumstances which may constitute cause include:

(1) interference by government officials making compliance impracticable; (2) situations

in which the factual or legal basis for a claim was not reasonably available to counsel; and

(3) ineffective assistance of counsel.  See Murray, 477 U.S. at 488; Bossett v. Walker, 41

---

[4]        The subsequent order of the Court of Appeals denying leave to appeal without
comment after the Appellate Division had expressly based its decision on a state procedural bar
does not change this result.  See Torres v. Hanslmaier, No. 94 Civ. 4082 (MGC), 1995 WL
272527, at *4 (S.D.N.Y. May 8, 1995) (citing Levine v. Comm'r of Corr. Servs., 44 F.3d 121,
126 (2d Cir. 1995)).

F.3d 825, 829 (2d Cir. 1994) (quoting <u>Murray</u>).  A showing of prejudice requires a petitioner to demonstrate that the failure to raise the claim previously had a substantial injurious effect on his case such that he was denied fundamental fairness.  <u>Reyes v. New York</u>, No. 99 Civ. 3628 (SAS), 1999 WL 1059961, at *2 (S.D.N.Y. Nov. 22, 1999). Finally, to establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent."  <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2002).

Cooper has not made any of the showings necessary to overcome his procedural default.  Accordingly, this Court lacks jurisdiction to consider whether the trial court should have granted a mistrial.  Moreover, even if that were not so, Cooper would not be entitled to habeas relief for the reasons set forth below.

2.   <u>Merits</u>

Under federal law, courts take an "inclusionary" approach to the admission of similar act evidence.  <u>See</u> <u>United States v. Paulino</u>, 445 F.3d 211, 221 (2d Cir. 2006). Accordingly, such evidence is admissible "for any purpose other than to show a defendant's criminal propensity," provided that its probative value is not substantially outweighed by the risk of unfair prejudice.  <u>Id.</u> (quoting <u>United States v. Pitre</u>, 960 F.2d 1112, 1118-19 (2d Cir. 1992)).

Here, the fact that Cooper had engaged in a prior marijuana transaction with Officer 2863 was directly relevant to his defense that he must have been misidentified because he was a porter, not a marijuana seller, at 429 Lenox Avenue.  Accordingly,

notwithstanding Justice Goodman's attempt to preclude the testimony regarding the

nature of the prior meeting between Cooper and Officer 2863, Cooper was not denied a

fundamentally fair trial simply because the jury heard evidence that it was drug related.

See Fed. R. Evid. 404(b) (similar act evidence admissible for such purposes as proof of

identity); United States v. Gibson, 170 F.3d 673, 677-80 (7th Cir. 1999) (proper to admit

defendant's admission of prior drug dealing to prove that undercover agent dealt with

him, not his brother); United States v. Johnson, 970 F.2d 907, 912 (D.C. Cir. 1992)

(testimony regarding prior fraudulent transaction properly admitted because it was

"highly probative, going directly to the likelihood that the witnesses could have recalled

[the person who picked up the proceeds of a fraudulent moneygram]"); United States v.

Stubbins, 877 F.2d 42, 43-44 (11th Cir. 1989) (evidence of defendant's attempted drug

sale only a few months earlier at the same address properly received to disprove defense

of mistaken identity); see also United States v. Wilson, 31 F.3d 510, 514-15 (7th Cir.

1994) (evidence of drug sale several days earlier at the same location admissible to show

opportunity, knowledge, and plan; conviction affirmed despite lack of limiting

instruction); United States v. Fagan, 996 F.2d 1009, 1015 (9th Cir. 1993) (police officer's

brief reference to defendant's gang membership in drug case not unfairly prejudicial

because it was "probative of [the officer's] ability to recognize and identify [the

defendant]"); cf. United States v. Arroyo-Angulo, 580 F.2d 1137, 1149 (2d Cir. 1978)

(similar act evidence "admissible even if the acts occurred after the crime charged in the indictment").

Additionally, even if the admission of testimony regarding the prior drug sale were error, the proof of Cooper's guilt was overwhelming. Thus, the testimony of two trained undercover police officers established that Cooper had played an important role in the consummation of the sale on August 27. Moreover, during his direct testimony, Cooper did not deny selling marijuana to an undercover on that date. Instead, he simply stated he could not recall doing so. (Tr. 321, 333). He also conceded that he was employed on a regular basis at a building which was the site of frequent marijuana arrests, although he professed ignorance as to the source of the marijuana sold there or the reason for the building's popularity. (Id. at 337-42). Since the proof against Cooper was strong, and his own testimony stretched credulity, Cooper plainly cannot show, as he must, that the similar act evidence led to his conviction in a case where he otherwise would likely have secured an acquittal. He therefore has not established a due process violation.

Finally, the respondent contends that the state court decisions that Cooper seeks to challenge were not contrary to, or an unreasonable application of, clearly established federal law because the Supreme Court has "express[ed] no opinion" as to whether the admission of prior-crimes evidence to show propensity would violate due process. (See Resp't's Mem. at 15-16 (citing Estelle, 502 U.S. at 75 n.5)). Although Estelle did not reach that question, the Supreme Court has held, in the context of federal

18

prosecutions, that a defendant's protection against unfair prejudice stems from, among other things, the requirements of (a) Fed. R. Evid. 404(b) that the similar act evidence be received for a proper purpose; (b) Fed. R. Evid. 403 that the probative value not be substantially outweighed by the risk of prejudice; and (c) Fed. R. Evid. 105 that the trial court instruct the jury upon request that similar act evidence "is to be considered only for the proper purpose for which it was admitted." Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  Here, the similar act evidence was volunteered in violation of the trial court's pretrial ruling, but the prosecutor used it only for the proper purpose of establishing that the undercover officers' identification of Cooper was not mistaken. Additionally, because Cooper contested the officers' identification of him as the person who supplied the marijuana to Lang on August 27, the risk of prejudice was plainly outweighed by the probative value of the volunteered testimony.  Finally defense counsel never requested a limiting instruction, much less a mistrial.  For these reasons, the respondent is correct that the state court's affirmance of Cooper's conviction was not contrary to existing Supreme Court law.

IV.    Conclusion

Cooper's petition should be denied. Furthermore, because Cooper has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

V.    Notice of Procedure for Filing of Objection to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send courtesy copies to the chambers of the Honorable Richard M. Berman, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Berman, Any failure to file timely objections will result in a waiver of those objections for purpose of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:    New York, New York
          July 9, 2007

                                        _____
                                        FRANK MAAS
                                        United States Magistrate Judge

20

Copies to:

Honorable Richard M. Berman
United States District Judge

George Cooper
# 03-A-2809
Mid State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

Alyson J. Gill, Esq.
Assistant Attorney General
Office of the Attorney General – State of New York
(212) 416-8010  (fax)

21